**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **HECTOR RIVERA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PERCY MYERS,**<br>**CHRISTINE BROWN,**<br>**BOB BLUM,**<br>**DESEA ASHINI,**<br>**NURSE ALLIE,**<br>**JANE DOE 1, and**<br>**JANE DOE 2,**<br><br>**Defendants.** | **Case No. 25-cv-02164-RJD** |

# MEMORANDUM AND ORDER

**MAGISTRATE JUDGE REONA J. DALY:**

Plaintiff Hector Rivera, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. §

[1] The Court has jurisdiction to screen the First Amended Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

1915A(b).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges that prior to his incarceration he was shot several times in the back and left leg and underwent surgery at Mount Sinai Hospital. (Doc. 12, p. 6). Following his surgery, the doctors at Mount Sinai Hospital created a treatment plan, which included assessing the severity of the damage to Plaintiff's spinal cord, left leg, and nerves and ordering physical therapy. (*Id.*). Plaintiff, however, was convicted and entered IDOC custody at some point following his surgery, and so, Plaintiff was unable to complete the recommended treatment plan. (*Id.*).

After he arrived at Pinckneyville Correctional Center (Pinckneyville) on September 6, 2023, Plaintiff states that he "quickly" informed the "interview nurse" that he suffers from severe spine, back, and leg issues. (Doc. 12, p. 7). Plaintiff requested to see the medical director as soon as possible. (*Id.*). The nurse informed Plaintiff that she would place him on the list to see Dr. Myers. (*Id.*).

Plaintiff states that the cells at Pinckneyville are twenty-eight square feet and are extremely small. (Doc. 12, p. 6). He alleges that he was initially assigned to a cell located on the "top deck" and to the top bunk bed in the cell. (*Id.*). Because of his physical condition, he had difficulty using the stairs to access his cell and climbing in and out of his bunk bed, which he had to do by stepping on the toilet and the sink because a ladder was not provided. (*Id.*). On November 26, 2023, Plaintiff alleges that he fell while trying to climb onto his bunk bed. (*Id.* at p. 7). The fall exacerbated his sciatic nerve pain and existing back and spinal cord injuries. (*Id.*).

Plaintiff states that he submitted a sick call request to receive medical care for his existing and new injuries to his spinal cord and left leg and nerve damage caused by the fall, and he was seen by Nurse Allie on December 16, 2023. (Doc. 12, p. 7). During the appointment, Nurse Allie refused to examine Plaintiff's pre-existing injuries and did not "record them." (*Id.*). Plaintiff continued to suffer from pain. (*Id.*). He submitted numerous sick call requests asking for stronger pain medicine, low bunk and low gallery permits, and to see Dr. Myers. (*Id.*).

Around March 2024, Plaintiff had an appointment with Nurse Practitioner Blum. (Doc. 12, p. 7). Plaintiff told Blum about his fall from the bunk bed, that climbing onto the top bunk bed and using the stairs to access his cell aggravated his existing injuries, and that his pain was so severe that he had trouble sleeping. (*Id.*). Plaintiff also requested low bunk and low gallery permits. (*Id.*). Blum responded that the appointment was for Plaintiff's fungal infection and not for his spinal cord, back, and leg injuries or his pain, and that he could only address a single issue during the appointment. (*Id.*). Plaintiff states that he became upset. (*Id.*). He told Blum that the policy did not make any sense, and he asked Blum to review his medical chart for his previous sick call requests regarding chronic pain, medical permits, and to be seen by a doctor. (*Id.*). Blum responded, "Maybe next time, just place back in another sick call request." (*Id.*).

Because Plaintiff was in excruciating pain, he began sleeping on the floor of his cell. (Doc. 12, p. 7). He and his cellmate began having arguments about the fact Plaintiff was sleeping on the floor, and Plaintiff became afraid he would be unable to protect himself if his cellmate attempted to physically harm him. (*Id.*).

On June 6, 2024, Plaintiff was seen by Dr. Meyers. (Doc. 12, p. 8). Plaintiff informed Dr. Meyers of his medical history and ongoing pain. (*Id.*). He explained to Dr. Meyers that prior to incarceration, following his surgery, the doctors at Mount Sinai Hospital had created a treatment plan for him. (*Id.*). Plaintiff told Dr. Meyers he was sleeping on the floor of his cell because climbing onto the top bunk bed exacerbated his prior injuries. (*Id.*). He requested low bunk and low gallery permits, to be seen by a neurologist, and stronger pain medication. (*Id.*). Dr. Meyers did not examine Plaintiff's injuries, and he denied Plaintiff's request for low bunk and low gallery permits. (*Id.*). Dr. Meyers also would not refer Plaintiff to a neurologist and told Plaintiff that neurologists were too expensive, and Plaintiff "must first take baby steps." (*Id.*). Dr. Meyers ordered Tylenol and naproxen but did not address Plaintiff's difficulty sleeping and agonizing pain. (*Id.*).

In July 2024, Plaintiff describes speaking with Christine Brown, the healthcare unit administrator, in the healthcare unit. (Doc. 12, p. 8). He informed Brown of all the issues concerning his medical conditions and inadequate care. (*Id.*). Brown confirmed that she had been alerted to his issues by members of his family, and she said that she would look into his complaints and "get back" to him. (*Id.*). Brown did not contact him. (*Id.*).

On August 6, 2024, Plaintiff initiated a hunger strike for ten days "due to his unnecessary and agonizing pain." (Doc. 12, p. 8). Plaintiff states that his requests for medical care continued to be denied. (*Id.*).

Plaintiff saw Physician Assistant Desea Ashini on December 5, 2024. (Doc. 12, p. 8). Plaintiff asserts that Ashini also refused to examine his injuries, review his medical records, issue medical permits, or order different pain medications. (*Id.*). He claims that

Ashini increased Plaintiff's medication and gave him instruction on back stretches. (*Id.* at p. 9).

Plaintiff wrote letters to Christine Brown requesting help from November 24, 2024, through January 5, 2025. (Doc. 12, p. 9). On September 16, 2025, Plaintiff states he was finally issued low bunk and low gallery permits, but as of filing the amended complaint, his other requests have not been granted. (*Id.*). He states his complaints "continue to go unheard." (*Id.*).

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate the following count:

> **Count 1:** Eighth Amendment claim against Meyers, Blum, Brown, Ashini, Nurse Allie, Jane Doe 1, and Jane Doe 2 for failing to provide Plaintiff adequate medical care for preexisting injuries – damaged spinal cord, back and leg issues, sciatica, and pain associated with these conditions.

**Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th

[2] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Cir. 2006)). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Plaintiff alleges that his pre-existing physical ailments and pain caused by being shot in the back and leg prior to incarceration have not been properly treated since his arrival at Pinckneyville in 2023. He claims that he has experienced lengthy delays in being scheduled to see a medical provider and when he does receive an appointment, the provider has failed to address his concerns or grant his requests for certain medical permits, medication, x-rays, and specialist referrals. The failure to provide Plaintiff with his specific requests does not in and of itself amount to deliberate indifference, as the Eighth Amendment does not entitle Plaintiff to demand specific care. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Persisting in a course of treatment known to be ineffective, choosing an easier and less efficacious treatment

without exercising judgment, or causing an inexplicable delay in treatment, however, can be evidence that a defendant's actions or inactions were not based on accepted professional judgment and amount to deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). Thus, although it appears that Plaintiff only had a single appointment with each medical provider – Dr. Meyers, NP Blum, and PA Ashini, as members of Plaintiff's treatment team, it is plausible to infer that Blum, Meyers, and Ashini were aware of Plaintiff's existing conditions based on his conversation with them and could access his medical records and that they acted with deliberate indifference by not providing or ensuring that he was provided effective treatment for these conditions. Count 1 will proceed against Meyers, Blum, and Ashini.

Count 1 will also proceed against Christine Brown. Plaintiff alleges that he spoke to Brown about not receiving adequate medical care for his pre-existing injuries and pain, he wrote her letters, and she confirmed that she had been contacted from his family about his lack of medical care, but she has failed to intervene and rectify the situation. *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). These facts are sufficient to state a claim for an Eighth Amendment deprivation against Brown.

The Court, however, will dismiss Count 1 as to Nurse Allie, Jane Doe 1, and Jane Doe 2. Plaintiff's single interaction with Nurse Allie on December 16, 2023, at nurse sick call is not enough to establish deliberate indifference. *See e.g., Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference). Her failure to examine him could be considered gross negligence at most. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated

instances of neglect… cannot support a finding of deliberate indifference”).

Plaintiff has also not stated a claim against Jane Doe 1 and Jane Doe 2, described as nurses. (Doc. 12, p. 3). In the statement of claim, Plaintiff does not reference or attribute any conduct to a Jane Doe 1 or a Jane Doe 2. He mentions interacting with an unnamed nurse on September 6, 2023, when he arrived at Pinckneyville, and he states that he consistently submitted sick calls to the nurses. (Doc. 12, p. 7, 8). But is not clear who Jane Does 1 and 2 are and what they did or failed to do to violate his constitutional rights. Accordingly, Count 1 is dismissed as to Jane Does 1 and 2.

## Disposition

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Meyers, Brown, Blum, and Ashini and is **DISMISSED** without prejudice against Nurse Allie, Jane Doe 1, and Jane Doe 2. As there are no surviving claims against Nurse Allie, Jane Doe 1, and Jane Doe 2, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

The Clerk of Court shall prepare for Meyers, Brown, Blum, and Ashini the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal

service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendant should respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 2, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.